HELEN M. SCHWARTZ and EDMUND B. SCHWARTZ, an Infant, by HELEN M. SCHWARTZ, His Guardian ad Litem, Respondents, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

Third Department, December 28, 1916.

Railroad — negligence — death caused by act of fellow-servant in dumping coal car — failure of master to promulgate rules — proof not justifying recovery — death of person with powers of superintendence.

Action based at common law and also under the statute of Pennsylvania to recover for death caused by the alleged negligence of the defendant. Among other duties the decedent had that of thawing out and overseeing the thawing out of cars of coal which had become frozen, which was accomplished by means of live steam supplied by a pipe which was thrust into the frozen coal. While standing upon a load of coal during said operation the car was dumped by the decedent's fellow-servant, who opened trapdoors in the bottom of the car, with the result that the decedent fell with the heated coal and was severely burned by it and by the escaping steam. The only item of negligence submitted to the jury was the failure of the defendant to promulgate and enforce rules which would have obviated the accident. Evidence examined, and *held*, insufficient to establish that the defendant was under the obligation of promulgating rules in this respect, and that the plaintiff had failed to prove a cause of action in that the only negligence shown was that of the decedent's fellow-servant, which barred a recovery at common law.

*Held, further*, that as the defendant had merely received the coal as an ordinary consignee, and as the unloading of the same was not an essential part of the operation of its railroad, it was not called upon to make rules governing the unloading of frozen coal.

*Held, further*, that as the defendant had provided a safe and proper method of discharging the coal from the car by means of the trapdoors and as there was no occasion for the decedent to stand upon the coal while engaged in thawing it, the defendant was not under the obligation of promulgating rules in this respect.

Moreover, the plaintiff is not entitled to recover where the decedent was shown to be the chief electrical engineer at the defendant's power house, for he himself should have promulgated rules if rules were necessary.

APPEAL by the defendant, Lehigh Valley Railroad Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Tioga on

the 13th day of October, 1915, upon the verdict of a jury for $3,500.

*Cobb, Cobb, McAllister & Feinberg* [*Peter F. McAllister* of counsel], for the appellant.

*Frederick E. Hawkes,* for the respondents.

Woodward, J.:

The complaint in this action, which is based on the common law aided by a statute of Pennsylvania, similar to our own, which permits a cause of action to survive the death of the injured party and to be prosecuted for the benefit of his dependents, alleges that on the 15th day of January, 1914, while plaintiff's intestate, Michael B. Schwartz, was employed as a laborer by the defendant, he was so injured that he subsequently died from the effects thereof. It is specifically alleged that " among his duties was that of thawing out and overseeing the thawing out of cars of coal which had become frozen, such thawing out being done by driving into such frozen coal, while still in cars, a hollow iron pipe with holes in the sides thereof, into which steam was carried by means of rubber pipes from a central steam plant, and forced at high pressure through said rubber pipe and hollow iron pipe, into such frozen coal; that after such coal should be sufficiently thawed, it was the duty of other employees of the defendant to open from the bottom the cars containing such coal, and allow the same to run out into hoppers and thence to buckets placed on a constantly moving chain, from whence such coal was carried to breakers over a boiler room in the  *  *  *  shops of defendant; " that on the said 15th day of January, 1914, "said Michael B. Schwartz with other servants of defendant, was engaged in thawing coal of defendant in a car at the shops of defendant, in the manner above stated; that said Schwartz had put three of said steam nozzles in a car of frozen coal and was standing upon the coal in said car; that while he was so standing, and while steam was being forced from said three nozzles at an intense heat and a high pressure into the coal in said car on which said Schwartz was standing, another employee of the defendant negligently

dumped or opened said car from the bottom, allowing the loose coal to fall through the bottom of said car and drawing or precipitating said Michael B. Schwartz into said coal while the same was at an intense heat and while said steam was being carried into the same, whereby the said Michael B. Schwartz was severely scalded by the outpouring steam and burned by the heated coal and steam, receiving injuries," etc.

The complaint assigns as grounds of negligence that the defendant negligently employed deceased "in a place which, on account of the dangerous character of the work carried on by defendant, it should have foreseen would be a place of danger, against which danger it could have guarded in the exercise of reasonable care, by employing competent fellow-servants of deceased and by making and enforcing safe, proper and suitable rules and regulations for the above-described work, in guarding against such danger as aforesaid, and by using and maintaining proper and safe machinery, while, on the contrary, the defendant negligently employed in such work incompetent servants, and defendant carelessly and negligently exposed said deceased to danger in directing him to work and assist incompetent fellow-servants, and negligently omitted to notify the deceased of the incompetency of the fellow-servant who so dumped or opened such car, by which such injuries were had to deceased, and negligently failed and neglected to make and enforce safe, proper and suitable rules and regulations for the conduct of the above-described work, and defendant negligently omitted to keep in repair a belt on the elevator, by which the coal was removed from such cars, such belt being out of repair at the time deceased met his said injuries, so that the coal which was dumped from said car was clogged and prevented from being carried away, thus leaving the deceased held by such falling coal and impeding and delaying his rescue therefrom."

Obviously under this pleading there was no question raised as to the safety of the place provided for the plaintiff's decedent to work. This place was the proper plant of the defendant at Sayre, Penn., and the only negligence in respect to the place is alleged to have been that it was "on account of the dangerous character of the work carried on by defendant," which

imposed the duty of foreseeing that it would be a place of danger, against which it might have guarded by employing competent fellow-servants. It was not the place itself which was dangerous, but the alleged character of the work to be performed, and this, it is claimed, could have been obviated by the employment of competent fellow-servants. No defect having been pointed out in the place which was afforded by the defendant, it may be assumed that there was no breach of the duty of the defendant to provide a reasonably safe place in which to work, and our attention is not called to any evidence in support of the allegation that the defendant employed incompetent servants in the performance of the work; at least no such question was submitted to the jury. The court took from the jury all questions of negligence growing out of the alleged defect in the machinery, by which the belt failed to operate the elevating apparatus for the coal, and practically the only question which was submitted to the jury was whether the defendant was negligent in not promulgating a rule which would have obviated this accident. Upon the trial the plaintiffs rested their case with no evidence as to the kind of a rule which should have been adopted; the record showed only that there had been no rule fixed for this particular work. Upon a suggestion of the court plaintiffs asked to reopen the case, and on being permitted to do so, recalled a witness named Smith, and this witness was permitted to testify, over the objections of the defendant, to matters which had some bearing, perhaps, upon whether there should have been rules promulgated, but in our opinion they failed to establish the facts necessary to constitute a cause of action. The evidence wholly failed to sustain the allegation of the complaint that the car was dumped while the steam was being forced into the frozen coal; the evidence rather established that plaintiffs' decedent, who appears to have been in charge of the defendant's power station, went upon the car and threw off the three steam pipes, and that some two or three minutes thereafter another employee directed an Italian to open the drop door to the coal car and permit the coal to run down into a bin beneath the tracks, from whence it was to be removed by an endless chain elevator to the boiler rooms of the defendant. There was no evidence that this unloading

of cars was an important part of the duties of the decedent, or that it was a matter of such frequent occurrence as to call upon the defendant to make any rules in respect thereto. The fair inference is that the defendant maintained a power house at Sayre, but how large this power house was, or what amount of coal was unloaded, nowhere appears. For all that the case discloses there may not have been more than the two cars of coal unloaded in a year, and unless this unloading was a matter of general employment occurring at short intervals, it would be absurd to suggest that the defendant owed the duty of promulgating rules. The dumping of an occasional carload of coal into a chute underneath the tracks of the defendant from cars specially designed for that kind of unloading would be so entirely incidental that the thought would never occur to any one that it was the duty of a great railroad corporation to make rules in respect thereto, any more than it would be expected that a corporation operating dump wagons would be called upon to promulgate such rules. Moreover, it does not appear from the evidence that it was necessary for the plaintiffs' intestate to have been upon the car at all, or that there had ever been any reason why the defendant should have expected its employees to be upon the car after the steaming had been completed and the pipes removed. Of course, if this were a part of the general operation of the defendant's railroad, and it was necessary to thaw out all cars, and it was necessary to go upon them and to remain there during the process, there might be some foundation for the contention that it was necessary for the defendant to establish rules such as the plaintiffs' witness, considering the question after the accident occurred, suggested. But the unloading of this car of coal was not a part of the operation of the defendant's railroad, at least no evidence shows it to have been. The defendant maintained a power plant at Sayre, Penn., as a part of its repair shops it may be assumed. As a transportation company, moving carload lots, its duty ended with placing the cars to be unloaded; the duty of unloading customarily falls upon the consignee, and the defendant in this case is in the position of any ordinary consignee receiving a carload of coal. Would any private consignee of a carload lot of coal, some of

which might be frozen during the severe winter weather, be called upon to make rules governing the unloading of such cars? The fact that the defendant, exercising its corporate franchise as a transportation corporation, employs large numbers of people, does not operate to charge it with the duty of making rules governing a small group of men employed at a power plant and engaged in the incidental work of discharging occasional carload consignments of coal, unless there were conditions which would have imposed a like duty upon any other consignee; and the evidence in this case does not disclose such a situation. The negligence which was the proximate cause of the decedent's death was not the steaming of the coal, to permit it to flow out through the opening in the bottom of the car, but the act of a fellow-servant in opening the trapdoor in the bottom of the car while the plaintiffs' intestate was upon the car, and there being no evidence to support the claim of incompetence on the part of this servant, the defendant is not liable for the negligent act of a fellow-servant under the common law, which controls this action.

There is some dispute as to the authority of the plaintiffs' intestate. The defendant urges that he was a foreman, having control of the work and employees, and the evidence seems to support this contention. The plaintiffs' pleadings tell us that among his duties "was that of thawing out and overseeing the thawing out of cars of coal which had become frozen," so that he was, at least, a superior to the man who was the proximate cause of the accident. But in the view we take of the matter this was not important. At the time of the accident he was engaged in the details of the work of discharging the load; he was actively doing the work which he might have directed others to do, and the accident occurred solely by reason of the fact that a fellow-servant opened the trapdoor of the car while the decedent was in a position of danger, and as there was no situation calling on the master to promulgate rules, so far as the evidence discloses, the master cannot be charged at common law with the negligent act of a fellow-servant of the injured employee. The testimony of Smith that he had seen similar accidents where the coal was not heated, and his vague and uncertain testimony as to any practical

rules, is clearly not sufficient to charge the master with negligence in not making and enforcing a rule to govern these incidental common labors of operating a power house and unloading the coal necessary; the witness gave no facts; he simply stated his conclusion that he had seen similar accidents with cold coal, but there is not the slightest evidence to show that there was any occasion for any one being upon the coal during the discharge, whether the coal was frozen or not. The fact that the cars were constructed so that they were to be discharged by opening a trapdoor in the bottom of the car presupposes that they were not to be discharged in any other manner, and no occasion existed for any one to be on top of the load when the trapdoor could only be opened from the lower outside of the car. Of course, when the car was being discharged in the manner in which it was designed to be discharged if any one was on top of the load he would be liable to be carried down through the opening; but where the defendant had provided a safe and proper method of discharging the car, which did not require any one to be in a position involving danger, the fact that some one may have put himself in such a position was not notice to the defendant that the work to be performed by the plaintiffs' decedent was such as required the promulgation of a special rule.

We think the plaintiffs failed to establish facts sufficient to constitute a cause of action, and that the judgment appealed from should be reversed.

The judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred, KELLOGG, P. J., in memorandum, in which all concurred.

KELLOGG, P. J. (concurring):

The plaintiffs' intestate was not an ordinary workman, but was the chief electrical engineer at the defendant's power house at Sayre, and had general supervision and charge of the men and the work going on there. Schultz usually directed the unloading of coal under the direction of the decedent, but upon the day in question the decedent put Schultz at some other

work and he and Lyons undertook to "thaw out" the coal in the cars standing near the pockets. The coal was frozen and it was necessary to thaw it out, and they remained during the noon hour to thaw it out, so that when the men returned from lunch the work of unloading could proceed. They had frequently thawed out coal before and were entirely familiar with every detail of the work. Lyons and Schwartz attempted to unload one of the cars; Lyons and an Italian pulled the rod from the car nearest the power house but it would not dump. Schwartz, the decedent, stood upon the car, and Lyons said: "We can't empty the car, and we will have to try the other one." He went over to turn off the steam by which the coal in the second car was being thawed, and Schwartz crossed the sill to that car. Lyons told the Italian to get a wrench, and they went to the other side of the second car to dump it. Before they started Schwartz had pulled the rubber tubes, from which the steam had been shut off, out of the coal and threw them on the ground. They then started to dump the coal and Schwartz went towards the rear of the car. Sometimes Schwartz, while the coal was being dumped, would stand at the end of the car; sometimes he would get off the car; but if he got off it would be necessary for him to get up on the car again immediately after it was dumped. Schwartz did not get off, and when the coal was dumped he fell into the hot coal and received burns causing his death. The company has been held liable on the ground that it did not promulgate rules determining how frozen coal should be unloaded. Schwartz was familiar with the practice, and if there were no rules it was peculiarly his fault, as he had charge of that part of the business. He was the man to see that proper rules were made. He knew there were no written rules; he understood just what was being done and the dangers accompanying the work, and instead of getting off the car while the dump was being made he preferred the easier and more dangerous method of standing on the car. He determined how the coal should be unloaded, and probably knew more of the dangers attending the work than any other person connected with the company. He could not complain that the company did not adopt rules for his safety when he

was the *alter · ego* of the master at this place and time and knew the dangers and the manner of doing the work. I, therefore, favor affirmance.

All concurred.

Judgment reversed on law and facts and new trial granted, with costs to appellant to abide event. The court disapproves of the finding of fact that the defendant was guilty of negligence.